

FILED
CLERK, U.S. DISTRICT COURT

FILED
DEC 2 3 2003
12-23-03

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT

DEC 2 3 2003

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority
Send
Clsd
Enter
JS-5/JS-6
JS-2/JS-3
Scan Only

SCANNED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AND SYNDICATED PRODUCTIONS, INC., | ) Case No. CV 03-09311 DDP (RNBx) ) |
| Plaintiff, | ) **ORDER DENYING PLAINTIFF'S EX** ) **PARTE APPLICATION FOR A TEMPORARY** ) **RESTRAINING ORDER AND ORDER TO** |
| v. | ) **SHOW CAUSE RE: PRELIMINARY** ) **INJUNCTION** |
| ROBERT GUINEY; et al., | ) ) [Motion filed on 12/19/03] |
| Defendants. | ) ) |

This matter comes before the Court on the plaintiff's *ex parte* application for a temporary restraining order and order to show cause re: preliminary injunction. After reviewing and considering the materials submitted by the parties, the Court denies the application and adopts the following order.

I.   **Background**

The plaintiff And Syndicated Productions, Inc. ("ASP"), a subsidiary of Telepictures Productions, Inc., is the producer of the television series "The Bachelor" (the "Series") broadcast on the ABC television network ("ABC"). The Series is an unscripted show in the reality programming genre, and consists of a "bachelor"

ENTERED ON ICMS
DEC 2 3 2003

14

1  who, over the course of the television series, narrows down a pool

2  of 25 women to just one woman to whom the bachelor may or may not

3  propose marriage during the season finale.  The defendant Robert

4  Guiney ("Guiney") was the bachelor for this past season, the

5  Series' fourth season, the broadcast of which concluded on November

6  19, 2003.  The season finale drew an average audience of over 18

7  million viewers.  (Auerbach Decl. ¶ 2.)  The success of the Series

8  has led to the creation of "The Bachelorette," a related television

9  series that is scheduled to begin airing its second season on ABC

10  on January 14, 2004.  (Id. ¶ 3.)  Guiney had been one of the

11  eliminated male participants in the first season of The

12  Bachelorette.  (Id. ¶ 5.)  ABC is also currently airing a three-

13  part series, "Trista and Ryan's Wedding," which covers the

14  anticipated marriage of the romantic couple that resulted from the

15  first season of The Bachelorette.  (Id. ¶ 3.)

16      On or about May 20, 2003, Guiney signed an agreement (the

17  "Agreement")[1] with ASP that contains an exclusivity provision (the

18  "Exclusivity Provision").  The Exclusivity Provision provides:

19      I agree that for a period commencing on the date of this
        Agreement and concluding six (6) months after the date of
20      the initial broadcast of the Series episode in which the
        Bachelor reveals his decision regarding the final
21      Bachelorette (hereinafter the "Initial Exclusivity
        Period"), I shall not appear on or authorize production
22      of or participate in any way with any other television
        programming, the development of any other television
23      programming (including but not limited to negotiation
        with third parties regarding the development of any type
24      of programming), radio programming, print media, on-line
        services, or any other media outlet now known or
25      hereafter devised (including, but not limited to the
        internet [including chat rooms, message boards, etc.]),

26

27      ───────────────
        [1]  Although the Agreement contains an arbitration provision,
        the Agreement specifically provides that either party may seek
28  injunctive relief in court.  (See Vella Decl., Ex. A at 16.)

1     or any commercials or advertisements without the
Producer's and the Network's prior written consent.

2

3  (Vella Decl., Ex. A at 7.)  Based on the terms of the Exclusivity

4  Provision and a six-month extension for which ASP paid Guiney

5  $50,000, the Exclusivity Provision remains in full effect until

6  November 2004.  (See id., Ex. B.)  The Agreement also contains an

7  integration clause, whereby the Agreement "supersedes all prior

8  negotiations, understandings and agreements (whether written or

9  oral) of the parties hereto relating to the subject matter herein."

10  (Id., Ex. A at 15.)

11     On or about October 17, 2003, Guiney and the defendant Wind-Up

12  Entertainment, Inc. ("Wind-Up") entered into a full service

13  recording contract (the "Wind-Up Agreement").  Pursuant to the

14  Wind-Up Agreement, Guiney recorded a music record.  According to

15  Steve Lerner ("Lerner"), the president and co-founder of Wind-Up,

16  Wind-Up has manufactured 750,000 copies of Guiney's record.

17  (Lerner Decl. ¶ 8.)  Wind-Up has released 316,044 CDs to record

18  stores and, as of December 22, 2003, there are 282,044 CDs

19  remaining in the stores.  (Id. ¶ 10.)

20     In the present ex parte application for a temporary

21  restraining order, ASP claims: (1) that Guiney is in breach of the

22  Exclusivity Provision; and (2) that Wind-Up has intentionally

23  interfered with ASP's contract with Guiney.  ASP seeks to enjoin

24  the defendants, their agents, representatives, employees and anyone

25  acting on their behalf or in concert with them, from the following

26  conduct:

27     1.   In the case of Guiney, from appearing, authorizing or

28           participating in any television programming, radio

1        programming, print media, on-line services, or in any

2        other media including but not limited to the Internet or

3        any commercials or advertisements, without ASP's prior

4        written consent.

5     2.   In the case of Wind-Up, from promoting, publicizing,

6        marketing, advertising and/or in any way disseminating

7        Guiney's name or likeness to the public in any television

8        programming, radio programming, print media, on-line

9        services, or in any other media including but not limited

10       to the Internet, or any commercials or advertisements,

11       without Guiney having first obtained ASP's prior written

12       consent.

13  **II.   Discussion**

14     A.   <u>Legal Standard</u>

15     The traditional test for granting preliminary injunctive

16  relief requires the applicant to demonstrate: (1) a likelihood of

17  success on the merits; (2) a significant threat of irreparable

18  injury; (3) that the balance of hardships favors the applicant; and

19  (4) that the public interest favors granting an injunction.  <u>See</u>

20  <u>Dollar Rent A Car v. Travelers Indem. Co.</u>, 774 F.2d 1371, 1374 (9th

21  Cir. 1985); <u>see also</u> Schwarzer, et al., <u>Federal Civil Procedure</u>

22  <u>Before Trial</u>, ¶ 13:44 at 13-14 (1999).  The Ninth Circuit also uses

23  an alternative test which requires the applicant to demonstrate

24  either: (1) a combination of probable success on the merits and the

25  possibility of irreparable injury; or (2) serious questions going

26  to the merits and that the balance of hardships tips sharply in the

27  applicant's favor.  <u>See</u> <u>First Brands Corp. v. Fred Meyer, Inc.</u>, 809

28  F.2d 1378, 1381 (9th Cir. 1987).  The traditional test and the

1  Ninth Circuit test are not inconsistent.  Rather, they represent a
2  continuum of equitable discretion, whereby "the greater the
3  relative hardship to the moving party, the less probability of
4  success must be shown."  <u>National Ctr. for Immigrants Rights, Inc.</u>
5  <u>v. Immigration & Naturalization Serv.</u>, 743 F.2d 1365, 1369 (9th
6  Cir. 1984).  A temporary restraining order, specifically, requires
7  that "it clearly appears from specific facts shown by affidavit or
8  by verified complaint that immediate and irreparable injury, loss,
9  or damage will result to the applicant before the adverse party or
10  that party's attorney can be heard in opposition."  Fed. R. Civ. P.
11  65(b)(1).

12      Further, under California Civil Code § 3423(e), an injunction
13  may not be granted

14      To prevent the breach of contract the performance of
        which would not be specifically enforced, other than a
15      contract in writing for the <u>rendition of services</u> from
        one to the other where the promised service is of
16      <u>special, unique, unusual, extraordinary, or intellectual</u>
        <u>character, which gives it peculiar value</u>, the loss of
17      which cannot be reasonably compensated in damages in an
        action at law . . ..
18

19  Cal. Civ. Code § 3423(e) (emphasis added).  Under California Civil
20  Code § 3390, obligations which cannot be specifically enforced
21  include obligations to render personal services.  Cal Civ. Code
22  § 3390(1).

23      B.  <u>Analysis</u>

24          1.  <u>The Alleged Breach of Contract Cannot Be Enjoined</u>
25      The Court finds that injunctive relief is unavailable to ASP
26  because the services rendered by Guiney are not of "special,
27  unique, unusual, extraordinary, or intellectual character," as
28  required by § 3423.  <u>Id.</u> § 3423(e).  In <u>Motown Record Corp. v.</u>

5

1 _Brockert_, the California Court of Appeal throughly analyzed the

2 history and meaning of § 3423.  160 Cal. App. 3d 123 (1984).  The

3 central question in _Motown Record Corp._ was whether the defendant

4 had celebrity status when the contract was signed.  The defendant

5 in _Motown Record Corp._ was an unknown singer when she signed the

6 exclusivity clauses.  _Id._ at 126-27.  Only later, at the time of

7 the breach, had the defendant become a popular singer.  _Id._  The

8 court explained that the California legislature intended that

9 injunctive relief under § 3423 should "not be available against a

10 performer, however capable, who had not yet achieved distinction"

11 at the time the contract was signed.  _Id._ at 138.  Further, "[t]he

12 fact the bill was further amended to provide the services must be

13 special is a further indication the Legislature intended the

14 statute to apply only to persons who had attained 'star quality' no

15 matter how special their services might be."  _Id._  Because the

16 defendant in _Motown Record Corp._ was not a star when she entered

17 into the contract, § 3423 was not applicable and injunctive relief

18 was denied.  _Id._ at 138-40.

19     In the present case, The Bachelor is a reality-based

20 television series.  ASP concedes that Guiney, last season's

21 bachelor, is a "regular guy." (Auerbach Decl. ¶ 4.)  The personal

22 services for which Guiney was hired to render to ASP consisted of

23 Guiney's appearance as himself, not as a performer.  When Guiney

24 entered into the Agreement, he was not a performer of "star

25 quality."  Thus, the Court finds that injunctive relief is not

26 available to ASP under § 3423 and therefore denies ASP's _ex parte_

27 application for a temporary restraining order.

28

**III. Conclusion**

    ·For the foregoing reasons, the Court finds that injunctive relief is not available to the plaintiff and therefore denies the plaintiff's *ex parte* application for a temporary restraining order. This ruling does not preclude the plaintiff from filing a regularly-noticed motion for a preliminary injunction.

IT IS SO ORDERED.

Dated:     12-23-03

                                   DEAN D. PREGERSON
                                   United States District Judge