

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AND SYNDICATED PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROBERT GUINEY; et al., <br><br> Defendants. | Case No. CV 03-09311 DDP (RNBx) <br><br> **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** <br><br> [Motions filed on 01/26/04] <br><br> THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d). |

This matter comes before the Court on the defendants' motions to dismiss the plaintiff's complaint. After reviewing the parties' submissions and hearing oral argument, the Court grants the motions and adopts the following order.

I.  **Background**

   A.  Factual History[1]

The plaintiff And Syndicated Productions, Inc. ("ASP"), a subsidiary of Telepictures Productions, Inc., is the producer of the television series "The Bachelor" (the "Series"), broadcast on

---

[1] The Factual History section is adopted from the Court's December 23, 2003 Order in which the Court denied the plaintiff's *ex parte* application for a temporary restraining order and order to show cause re: preliminary injunction. All citations in this section refer to the moving papers associated with that *ex parte* application.

the ABC television network ("ABC"). The Series is an unscripted show in the reality programming genre, and consists of a "bachelor" who, over the course of the television series, narrows down a pool of 25 women to just one woman to whom the bachelor may or may not propose marriage during the season finale. The defendant Robert Guiney ("Guiney") was the bachelor for the Series' fourth season, the broadcast of which concluded on November 19, 2003. The season finale drew an average audience of over 18 million viewers. (Auerbach Decl. ¶ 2.) The success of the Series has led to the creation of "The Bachelorette," a related television series that began airing its second season on ABC on January 14, 2004. (Id. ¶ 3.) Guiney had been one of the eliminated male participants in the first season of The Bachelorette. (Id. ¶ 5.)

On or about May 20, 2003, Guiney signed an agreement (the "Agreement")[2] with ASP that contains an exclusivity provision (the "Exclusivity Provision"). The Exclusivity Provision provides:

> I agree that for a period commencing on the date of this Agreement and concluding six (6) months after the date of the initial broadcast of the Series episode in which the Bachelor reveals his decision regarding the final Bachelorette (hereinafter the "Initial Exclusivity Period"), I shall not appear on or authorize production of or participate in any way with any other television programming, the development of any other television programming (including but not limited to negotiation with third parties regarding the development of any type of programming), radio programming, print media, on-line services, or any other media outlet now known or hereafter devised (including, but not limited to the internet [including chat rooms, message boards, etc.]), or any commercials or advertisements without the Producer's and the Network's prior written consent.

---

[2] Although the Agreement contains a mandatory arbitration provision, the Agreement specifically provides that either party may seek injunctive relief in court. (See Vella Decl., Ex. A at 16.)

2

(Vella Decl., Ex. A at 7.; Compl. ¶ 19.) Based on the terms of the Exclusivity Provision and a six-month extension for which ASP paid Guiney $50,000, the Exclusivity Provision remains in effect until November 2004. (Vella Decl., Ex. B.) The Agreement also contains an integration clause, whereby the Agreement "supersedes all prior negotiations, understandings and agreements (whether written or oral) of the parties hereto relating to the subject matter herein." (Id., Ex. A at 15.)

On or about October 17, 2003, Guiney and the defendant Wind-Up Entertainment, Inc. ("Wind-Up") entered into a full service recording contract (the "Wind-Up Agreement"). Pursuant to the Wind-Up Agreement, Guiney recorded a music record, which Guiney and Wind-Up are currently promoting and advertising.

    B.    Procedural History

On December 19, 2003, ASP commenced the present action by filing a complaint that alleges causes of action for breach of contract (against Guiney) and intentional interference with contractual relations (against Wind-Up). ASP concurrently filed an *ex parte* application for a temporary restraining order and order to show cause re: preliminary injunction. In its *ex parte* application, ASP claimed: (1) that Guiney is in breach of the Exclusivity Provision; and (2) that Wind-Up has intentionally interfered with ASP's contract with Guiney. ASP sought to enjoin the defendants, their agents, representatives, employees and anyone acting on their behalf or in concert with them, from engaging in the following conduct:

    1.    In the case of Guiney, from appearing, authorizing or participating in any television programming, radio

|   |   |   |
|---|---|---|
| 1 |   | programming, print media, on-line services, or in any |
| 2 |   | other media including but not limited to the Internet, or |
| 3 |   | any commercials or advertisements, without ASP's prior |
| 4 |   | written consent. |
| 5 | 2. | In the case of Wind-Up, from promoting, publicizing, |
| 6 |   | marketing, advertising and/or in any way disseminating |
| 7 |   | Guiney's name or likeness to the public in any television |
| 8 |   | programming, radio programming, print media, on-line |
| 9 |   | services, or in any other media including but not limited |
| 10 |   | to the Internet, or any commercials or advertisements, |
| 11 |   | without Guiney having first obtained ASP's prior written |
| 12 |   | consent. |

On December 22, 2003, Guiney and Wind-Up separately filed oppositions to ASP's *ex parte* application. After reviewing and considering the parties' submissions, on December 23, 2003, the Court issued an Order denying ASP's *ex parte* application. In reaching its decision, the Court analyzed California Civil Code § 3423(e), which provides that an injunction may not be granted

> To prevent the breach of a contract the performance of which would not be specifically enforced, other than a contract in writing for the <u>rendition of personal services</u> from one to another where the promised service is of a <u>special, unique, unusual, extraordinary, or intellectual character, which gives it peculiar value</u>, the loss of which cannot be reasonably or adequately compensated in damages in an action at law . . . .

Cal. Civ. Code § 3423(e) (emphasis added).[3]  The Court found that injunctive relief was unavailable to ASP because the services

---

[3] Under California Civil Code § 3390, obligations that cannot be specifically enforced include obligations to render personal services. Cal. Civ. Code § 3390.

4

rendered by Guiney were not of "special, unique, unusual, extraordinary, or intellectual character," as required by § 3423. (Order at 5:25-28 (citing Cal. Civ. Code § 3423).) The Court then stated:

> In <u>Motown Record Corp. v. Brockert</u>, the California Court of Appeal throughly analyzed the history and meaning of § 3423. 160 Cal. App. 3d 123 (1984). The central question in <u>Motown Record Corp.</u> was whether the defendant had celebrity status when the contract was signed. The defendant in <u>Motown Record Corp.</u> was an unknown singer when she signed the exclusivity clauses. <u>Id.</u> at 126-27. Only later, at the time of the breach, had the defendant become a popular singer. <u>Id.</u> The court explained that the California legislature intended that injunctive relief under § 3423 should "not be available against a performer, however capable, who had not yet achieved distinction" at the time the contract was signed. <u>Id.</u> at 138. Further, "[t]he fact the bill was further amended to provide the services must be special is a further indication the Legislature intended the statute to apply only to persons who had attained 'star quality' no matter how special their services might be." <u>Id.</u> Because the defendant in <u>Motown Record Corp.</u> was not a star when she entered into the contract, § 3423 was not applicable and injunctive relief was denied. <u>Id.</u> at 138-40.
>
> In the present case, The Bachelor is a reality-based television series. ASP concedes that Guiney, last season's bachelor, is a "regular guy." (Auerbach Decl. ¶ 4.) The personal services for which Guiney was hired to render to ASP consisted of Guiney's appearance as himself, not as a performer. When Guiney entered into the Agreement, he was not a performer of "star quality." Thus, the Court finds that injunctive relief is not available to ASP under § 3423 and therefore denies ASP's *ex parte* application for a temporary restraining order.

(12/23/03 Order at 5:28-6:27.) The Court further stated that ASP was not precluded from filing a regularly-noticed motion for a preliminary injunction. (<u>Id.</u> at 7:5-6.)

In the instant motions, Guiney and Wind-Up separately move the Court for an order dismissing ASP's two causes of action for failure to state a claim upon which relief can be granted.

## II. Discussion

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999). In deciding a Rule 12(b)(6) motion to dismiss, the district court is required to assume that all allegations in the complaint are true, and must draw all reasonable inferences in the plaintiff's favor. Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). All allegations of material fact are construed in the light most favorable to the nonmoving party. Enesco Corp. v. Price/Costco Inc., 146 F.3d 1083, 1085 (9th Cir. 1998). The court, however, need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Mullis v. United States Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987). The court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

A court may dismiss contract-based claims where it appears from the pleadings that the contract is void and thus unenforceable. A.K. Mgmt. Co. v. San Manuel Band of Mission Indians, 789 F.2d 785, 785-86 (9th Cir. 1986). In determining whether a contract is void, a court may consider both the allegations in the complaint and any exhibits attached to the

complaint. <u>Parks Sch. of Bus., Inc. v. Symington</u>, 51 F.3d 1480, 1484 (9th Cir. 1995) (citing <u>Cooper v. Bell</u>, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)).

B. <u>Analysis</u>

As stated previously, ASP alleges the following two causes of action: (1) breach of contract (against Guiney); and (2) intentional interference with contractual relations (against Wind-Up). Guiney and Wind-Up each argue that ASP's claims are barred because the alleged contract's Exclusivity Provision constitutes an unlawful restraint on trade in violation of California Business & Professions Code § 16600.[4] As explained more fully below, the Court finds that the Exclusivity Provision is overly broad and therefore violates § 16600. Further, because the Exclusivity Provision is the only contract provision upon which ASP seeks relief from this Court, the Court dismisses both causes of action with leave to amend.

California Business and Professions Code § 16600 provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600. Further, "'while the cases are uniform in refusing to enforce a contract wherein one is restrained from pursuing an entire business, trade or profession . . ., where one is barred from pursuing only a small or limited part of the business, trade or profession, the contract has been

---

[4] While Wind-Up bases its motion to dismiss solely on this theory, Guiney asserts several theories in support of his motion to dismiss. Because the Court finds that the Exclusivity Provision is void under § 16600, the Court dismisses each cause of action on this ground. The Court, therefore, declines to address the other theories asserted in support of Guiney's motion to dismiss.

upheld as valid.'" <u>General Commercial Packaging, Inc. v. TPS Package Eng'g, Inc.</u>, 126 F.3d 1131, 1132 (9th Cir. 1997) (quoting <u>Campbell v. Board of Tr.</u>, 817 F.2d 499, 502 (9th Cir. 1987)). Section 16600 is "'an expression of public policy to ensure that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice.'" <u>Hill Med. Corp. v. Wycoff</u>, 86 Cal. App. 4th 895, 901 (2001) (quoting <u>Metro Traffic Control, Inc. v. Shadow Traffic Network</u>, 22 Cal. App. 4th 853, 859 (1994)).

> I agree that for a period commencing on the date of this Agreement and concluding six (6) months after the date of the initial broadcast of the Series episode in which the Bachelor reveals his decision regarding the final Bachelorette (hereinafter the "Initial Exclusivity Period"), <u>I shall not appear on or authorize production of or participate in any way with</u> any other television programming, the development of any other television programming (including but not limited to negotiation with third parties regarding the development of any type of programming), radio programming, print media, on-line services, or any other media outlet now known or hereafter devised (including, but not limited to the internet [including chat rooms, message boards, etc.]), <u>or any commercials or advertisements</u> without the Producer's and the Network's prior written consent.

Here, the Agreement's Exclusivity Provision provides:

(Vella Decl., Ex. A at 7; Compl. ¶ 19 (emphasis added).) ASP contends that § 16600 is inapplicable to the Exclusivity Provision for four reasons. First, ASP argues that § 16600 applies only to employment agreements, and that Guiney's agreement with ASP is not an employment agreement. (Opp. at 17:10-18:9.) For the following reasons, the Court disagrees and finds that § 16600 applies to agreements other than employment agreements.

The plain language of § 16600 does not support ASP's contention that only employment contracts fall within its purview.

The statute provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600 (emphasis added). Moreover, several cases have applied § 16600 to agreements other than employment agreements. See, e.g., General Commercial, 126 F.3d at 1132 (analyzing packaging agreement between contractor and sub-contractor under § 16600); Beatty Safway Scaffold, Inc. v. Skrable, 180 Cal. App. 2d 650, 656 (1960) (applying § 16600 to invalidate an exclusivity provision in a manufacturing and distribution contract); Hunter v. Superior Court of Riverside County, 36 Cal. App. 2d 100, 113-14 (1939) (applying California Civil Code § 1673, the predecessor to § 16600, to a manufacturing and distribution agreement). Based on the foregoing, the Court finds that § 16600 applies to ASP's agreement with Guiney regardless of whether it is an employment agreement.

Second, ASP argues that the Exclusivity Provision does not completely prevent Guiney from engaging in any particular profession. (Opp. at 18:10-19:22.) ASP specifically contends that the Exclusivity Provision "only prohibits certain unauthorized mass media promotions within a limited period of time . . . ." (Id. at 18:19-20.) However, neither the Exclusivity Provision nor any other part of the copy of the Agreement attached to the complaint refers to "mass media promotions." In addition, the complaint does not allege that Guiney is prohibited from participating only in mass media promotions. Rather, the Exclusivity Provision broadly prohibits Guiney from "participat[ing] in any way with" television or radio programing, print media, on-line services, any other media outlet, or any commercials or advertisements.

Based on the plain meaning of the Exclusivity Provision, the Court finds, as a matter of law, that it restrains Guiney from pursuing a variety of professions. The Court agrees with Wind-Up's contention that the Exclusivity Provision, on its face, prohibits Guiney from engaging in several professions, including but not limited to: an actor in a television program; a producer of a television pilot; a news anchor; a sales person for a cable company; a host of a radio show; a reporter for a newspaper; a newspaper delivery person; a website developer; and an advertising copy editor. (See Wind-Up Reply at 7:21-8:10.) At the hearing on the instant motions, counsel for ASP argued that a finding of illegality under § 16600 depends on a finding as to Guiney's profession prior to entering into the Agreement. According to ASP, because Guiney was a mortgage broker at the time he entered into the Agreement, the Court must determine whether the Exclusivity Provision prevents Guiney from engaging in that profession, and not any other profession. Assuming that ASP is correct in arguing that the Court must determine Guiney's profession prior to entering into the Agreement, and assuming, without deciding, that Guiney was a mortgage broker, the Court finds that the Exclusivity Profession would prevent Guiney from working in that profession. Under the plain terms of the Exclusivity Provision, Guiney would be restricted from advertising his brokerage services in any media, including the placement of an advertisement in the Yellow Pages. Such a restriction would substantially affect Guiney's ability to meaningfully pursue a career as a mortgage broker.

The California Court of Appeal has held that "broad" covenants not to compete are permitted only "in two narrow situations: where

a person sells the goodwill of a business, and where a partner agrees not to compete in anticipation of dissolution of a partnership." Kolani v. Gluska, 64 Cal. App. 4th 402, 406 (1998); see Cal. Bus. & Prof. Code §§ 16601, 16602. Here, as in Kolani, neither situation is present. In Kolani, the court of appeal upheld the trial court's decision sustaining a demurrer, without leave to amend, to a breach of contract claim on the ground that the covenant not to compete was broad and therefore void under § 16600. 64 Cal. App. 4th at 407-08. The court refused to rewrite or narrowly construe the contract, stating that, "[g]enerally, courts reform contracts only where the parties have made a mistake . . . , and not for the purpose of saving an illegal contract." Id. at 406-07. The Kolani court reasoned that "the policy of [§] 16600 would be undermined" by a court's rewriting of an illegal covenant not to compete, because employers and, by analogy, television series producers, would have an incentive to insert "broad, facially illegal covenants not to compete in their . . . contracts." Id. at 408. Similarly, in Beneficial Life Insurance Co. v. Knobelauch, the Ninth Circuit affirmed the district court's dismissal of the plaintiff's complaint pursuant to Rule 12(b)(6) because the relevant contract provision violated § 16600. 653 F.2d 393, 396 (9th Cir. 1981).

In the instant action, the Court finds that the Exclusivity Provision's prohibition on Guiney's "participation" in any media outlet, commercials, or advertisements is overly broad and therefore void under § 16600. Having reviewed the complaint and the attached documents, the Court finds that ASP has failed to

1  allege a set of facts which, if proved, would eliminate the § 16600
2  problems raised by the Exclusivity Provision.
3      ASP next argues that, because ASP's agreement with Guiney is
4  ongoing, ASP has the right to prevent Guiney from working
5  elsewhere. According to ASP, Guiney "agree[d] to be available
6  . . . for publicity interviews, publicity photograph sittings,
7  still photographs, on-the-air and other publicity activities"
8  through November 2004, after his services on The Bachelor
9  concluded.[5] (Opp. at 20:17-19.) In making this argument, ASP
10 relies on paragraphs III.A and III.B of the Agreement. However,
11 neither of these contract provisions is referred to in the
12 complaint. Moreover, paragraph III.A, titled "Consideration," does
13 not refer to any publicity services required of Guiney, and
14 paragraph III.B is redacted from the copy of the Agreement attached
15 to the complaint. In addition, ASP contends that, pursuant to
16 paragraph III.C of the Agreement, Guiney agreed to participate in
17 "special episodes" produced within three years of the premiere of
18 the first episode of the fourth season of The Bachelor. (Id. at
19 20:19-22.) However, paragraph III.C is not referred to in the
20 complaint, and is fully redacted from the copy of the Agreement
21 attached to the complaint. Thus, based on the allegations in the
22 complaint and the Agreement attached thereto, the Court finds that
23 Guiney's services to ASP have ended.
24     Moreover, while it is well-settled that, consistent with §
25 16600, an employer may prevent an employee from working elsewhere
26 during the term of an employment agreement, see Metro Traffic

---

[5] The Court will refer to these services as "publicity services."

1. Control v. Shadow Traffic Network, 22 Cal. App. 4th 853, 859-60
2. (1994), the Court has found no case law establishing that the same
3. principle applies to non-employment agreements. Moreover, ASP has
4. not provided the Court with any cases in which this principle has
5. been applied to non-employment agreements. Thus, even if ASP had
6. attached non-redacted copies of the Agreement's "publicity
7. services" provisions to the complaint, the Court fails to see how
8. these provisions would save the Exclusivity Provision, since, as
9. ASP has contended, the Agreement created neither an employment nor
10. an independent contractor relationship.[6]

11.     Lastly, ASP argues that the Exclusivity Provision is valid
12. because it is supported by substantial consideration. (Opp. at
13. 21:6-17.) The Court disagrees. Section 16600 contains two
14. statutory exceptions, which are found at §§ 16601 and 16602. These
15. exceptions apply to contracts involving the sale of corporate
16. shares or the goodwill of a business or partnership. Neither
17. exception refers to "substantial consideration" and neither
18. exception applies to the agreement at issue in this case. Thus,
19. the statute cannot be read as creating an exception to § 16600
20. based on "substantial consideration."

21.     Further, the cases cited by ASP are inapposite and do not
22. create an exception to § 16600 based on substantial consideration.
23. On the contrary, the Court has found cases in which § 16600 was
24. applied to invalidate contract provisions as void even though they

---

[6] The Court notes that the copy of the Agreement attached to the complaint contains no reference as to whether the Agreement is an employment agreement. However, in its opposition brief, ASP quotes from paragraph VI. I. of the Agreement, which expressly provides that Guiney is neither an employee nor an independent contractor of ASP. (See Opp. at 17:26-18:9.)

13

were supported by substantial consideration. See, e.g., Hill Med., 86 Cal. App. 4th at 906.

For the foregoing reasons, the Court finds that the Exclusivity Provision is overly broad and therefore void under § 16600. Based on the pleadings and attached documents, the Court finds that ASP has not alleged facts sufficient to overcome the § 16600 problems raised by the Exclusivity Provision. Because the Exclusivity Provision is void and because, on the present pleadings, it is the only provision upon which ASP bases its claim against Guiney, the Court dismisses ASP's breach of contract claim against Guiney. Further, because ASP's claim against Wind-Up for intentional interference with contractual relations is predicated on Guiney's alleged breach of a void and unenforceable provision, the Court find that ASP's claim against Wind-Up fails as a matter of law. See PMC, Inc. v. Saban Entm't, Inc., 45 Cal. App. 4th 579, 601 (1996). Accordingly, the Court dismisses ASP's claim against Wind-Up.

The Court grants ASP twenty (20) days from the date of this order to amend its complaint.

III. Conclusion

The Court grants the defendants' motions to dismiss, allowing the plaintiff twenty (20) days from the date of this order to amend its complaint.

IT IS SO ORDERED.

Dated: 3-4-04

DEAN D. PREGERSON
United States District Judge